Rel: May 15, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0545

_____

### G.M.B.

### v.

### J.J.B.

### Appeal from Chilton Circuit Court
### (CV-24-900136)

BOWDEN, Judge.

G.M.B. ("the husband") appeals from two orders of the Chilton Circuit Court ("the circuit court"), the first denying the husband's motion for the circuit-court judge to recuse himself and the second finding the

husband in contempt for violating a temporary protection-from-abuse order and awarding attorney's fees to J.J.B. ("the wife").

Procedural History

On July 8, 2024, the wife filed a petition for a protection-from-abuse order against the husband, which commenced a protection-from-abuse action ("the PFA action"). See Alabama Protection from Abuse Act ("the PFA Act"), See Ala. Code 1975, § 30-5-1 et seq. In her petition, the wife stated that the parties were married on October 19, 2019. She alleged that the husband had made her fear that she would be seriously injured and that he had engaged in reckless conduct that risked injury to her. She also alleged specifically that, on February 8, 2024, the husband had kicked in their bedroom door and had shaken and shoved her and that, on July 3, 2024, the husband had pushed her. The wife also stated that the husband was following her.

On July 9, 2024, the circuit court set the PFA action for a hearing and entered an ex parte protective order ("the PFA order") barring the husband from any contact with the wife until further order of the court. On August 26, 2024, the husband filed a motion to set aside the PFA order and to dismiss the PFA action. On September 5, 2024, the husband

filed an amended motion to set aside the PFA order and to dismiss the PFA action. In his amended motion, the husband argued that he had not been served with a signed copy of the wife's petition and that the petition had not been signed at all.

On September 6, 2024, the husband filed a motion to consolidate the PFA action with an action initiated by the wife for a divorce from the husband, which had been assigned case number DR-24-900093 ("the divorce action")[1]. On September 6, 2024, the wife filed a response to the husband's motions to set aside the PFA order and to dismiss the PFA action. In her response, the wife asserted that the husband had been aware of the petition and had multiple copies of it, that she needed the PFA order to stay in place for her personal safety, and that she had signed her petition when it was filed.

On September 10, 2024, the circuit court entered an order consolidating the PFA action and the divorce action. On September 12, 2024, the circuit court entered an order that stated that the husband had been served an unsigned copy of the petition for protection from abuse

---

[1]The husband appeals only from orders entered in the PFA action. He does not appeal from any order entered in the divorce action.

but that the petition had been subsequently signed. The circuit court also left the PFA order in place, resetting the case for hearing on September 18, 2024.

The circuit court entered an order on September 19, 2024, that stated that the parties had agreed to leave the PFA order in place. The September 19, 2024, order also stated that counsel for the husband would take possession of the husband's firearms within 10 days to facilitate transferring possession of those items to the husband. On October 1, 2024, the husband filed four documents: a motion for pendente lite relief, in which he stated that he had left the parties' marital residence when they separated and had been unable to retrieve many of his personal belongings and requested that he be permitted to return to the marital residence to retrieve his belongings; a motion seeking to hold with wife in contempt, in which he stated that the wife had not facilitated the exchange of the husband's firearms as previously ordered by the court; a motion to compel the issuance of several subpoenas; and a notice of service reflecting that he had served a notice of deposition on the wife.

On October 2, 2024, the wife filed a response to the husband's motion for contempt. In her response, the wife stated that she had

delivered the husband's firearms to her attorney's office on October 1, 2024, and that the parties' attorneys would coordinate a time to exchange the firearms. On October 8, 2024, the husband filed three documents: a notice of service of discovery documents that indicated that he had served an amended notice of deposition on the wife; a motion to compel the wife to provide responses to interrogatories and requests for production of documents; and a motion to schedule a hearing for his pending motions for contempt, to compel issuance of subpoenas, for pendente lite relief, and to compel discovery responses.

On October 17, 2024, the husband filed a notice of service of discovery documents that indicated that he had served a second amended notice of deposition on the wife. No response to the husband's motion to compel discovery responses appears in the record; however, the husband filed a reply to the wife's response to his motion to compel discovery responses on October 18, 2024. In his reply, the husband stated that he did not object to allowing the wife two additional weeks to respond to discovery.

Also on October 18, 2024, the husband filed a response to a motion for a protective order. Based on the contents of that motion and the

5

husband's assertions in his brief, that filing is in response to a motion for a protective order that is not contained in the record on appeal. In his response, the husband stated that he did not object to canceling and rescheduling a deposition that was set for the following week. On October 24, 2024, the husband filed a motion to set aside an order that does not appear in the record.

On October 28, 2024, the husband filed a renewed motion for a hearing date, requesting that the circuit court set a hearing for the following motions: the husband's motion for contempt; the husband's motion to compel the issuance of several subpoenas; the husband's motion for pendente lite relief; the husband's motion to compel discovery responses; and the husband's October 24, 2024, motion to set aside an order that is not in the record. On November 6, 2024, the husband filed a notice of service of discovery documents that indicated that he had served a third amended notice of deposition on the wife.

On November 11, 2024, the husband filed a motion for an immediate status conference, in which he stated that he was also joining the wife's motion for an immediate status conference. The wife's motion does not appear in the record before us. On November 14, 2024, the

circuit court entered an order setting the PFA action and the divorce action for a hearing on December 19, 2024, to address the status of the cases and all pending motions. On November 20, 2024, the husband filed a notice of service of discovery documents indicating that he had served a fourth amended notice of deposition on the wife. On December 4, 2024, the husband filed a motion to compel the wife's deposition.

On December 5, 2024, the wife filed a motion to show cause, in which she stated that the husband had continuously violated the PFA order by making posts on social-media websites directed to or concerning her. She asserted that the husband should be required to show cause as to why he should not be found in contempt and have sanctions issued against him. On December 6, 2024, the husband filed a response to the wife's motion to show cause and moved to strike exhibits that the wife had filed in support of that motion.

On December 19, 2024, the circuit court entered an order that stated, in pertinent part:

> "Case called this date on multiple motions. Parties present. Parties' counsel of record present. [The husband's] counsel asks to hold and continue all of their Motions except the Motion to set aside Order on depositions. [The wife] presented their Show Cause Motion and [the husband] gave their

7

response. Court gave additional directive to the [the husband] to have no contact with [the wife].

"ORDERED,

"1. All [of the husband's] Motions continued.

"2. Order set aside, insofar as [the husband's] being able to attend the deposition of [the wife], if it should be held.

"3. Discovery in these cases is limited to the issue of the listed items to be returned to [the husband].

"4. Sanction issue on the Contempt taken under advisement."

On January 24, 2025, the wife filed a motion for sanctions that referred to the December 19, 2024, order of the circuit court. In her motion, the wife asserted that the husband had continued to post comments directed to her through an electronic picture-frame device. On January 26, 2025, the circuit court entered an order setting all pending motions for a hearing on January 29.

On January 28, 2025, the husband filed what he styled as a renewed motion to continue the hearing, though no preceding motion to continue appears in the record before us. Also on January 28, 2025, the husband filed a motion for the recusal of the circuit-court judge, Sibley G. Reynolds. In his motion, the husband argued that he had filed several motions that had never been ruled on or had been ruled on in an untimely

8

manner. The husband argued that, by contrast, Judge Reynolds had promptly ruled on or scheduled hearings for motions that had been filed by the wife. Although there is no order continuing the hearing set for January 29, 2025, it appears that no hearing was conducted on that date.

On February 24, 2025, the husband filed a motion for an expedited hearing on his motion for recusal. He filed a renewed motion for an expedited hearing on his motion for recusal on February 26, 2025.

On March 9, 2025, the circuit court set the husband's motion for recusal for a hearing on March 13, 2025. On March 10, 2025, the husband filed a motion to reschedule that hearing, citing a conflict of counsel for the husband. On March 11, 2025, the circuit court set the PFA action and the divorce action for final disposition on April 16, 2025. The husband filed a motion for clarification on March 18, 2025, requesting that the circuit court specify whether his motion for recusal would be heard on April 16, 2025. On March 26, 2025, the circuit court entered an order setting all motions filed in the PFA action for a hearing on April 14, 2025.

On April 7, 2025, the husband filed a motion to stay all rulings on any motions other than his motion for recusal. On April 11, 2025, the wife filed a response to the husband's motion for recusal.

On April 14, 2025, the parties appeared before the circuit court for a hearing. The parties indicated at that hearing that they had reached an agreement to settle the divorce action. The terms of the settlement addressed the return of the husband's personal property. The parties agreed that the PFA action would remain pending and requested a review hearing for that action later in the year. The parties agreed that the wife's pending January 2025 motion for sanctions and the PFA order itself would be dismissed at the upcoming review hearing if no further issues between the parties occurred. The parties did not address any other pending motions, particularly the husband's motion for recusal.

On April 14, 2025, the circuit court entered an order denying the husband's motion for recusal. On that same date, the circuit court entered an order that stated that the PFA action would remain active while the parties settled the divorce action. The order stated, in pertinent part: "Case being addressed in the [divorce action]. [The PFA action] to remain pending while the [divorce action is] being settled. [The PFA action] is set for review, with pending sanction motion remaining active. Review is set for July 2, 2025, at 9:00 a.m."

10

On July 2, 2025, the parties appeared before the circuit court for the review hearing in the PFA action. Counsel for the wife called the husband to testify, and counsel for the husband objected and argued that, because the wife had not filed a new motion for sanctions or contempt, presenting evidence of any new violation of the PFA order violated the husband's due-process rights. That objection was overruled. Counsel for the wife then asked the husband if he had reshared an old video of himself and the wife on the social media website Facebook in May 2025, and the husband denied having done so. The husband testified that the circuit court had previously admonished him for making social-media postings directed to the wife during the pendency of the PFA action. The wife testified that she had received a screenshot of the husband's May 2025 post from her daughter and was concerned by it because the husband had a history of making social-media posts directed to or about her. She requested that the circuit court order the husband to pay her attorney's fees in the amount of $5,000 for her efforts to enforce the PFA order. She also requested that the circuit court leave the PFA order in place.

On July 9, 2025, the circuit court entered an order finding that the husband had violated the PFA order. The order stated, in pertinent part:

"Upon testimony being taken from both parties, the Court finds that [the husband], who is under a Protection from Abuse Order of 'No Contact,' violated the same by contact with [the wife] on social media, by publishing an old photograph of the parties on vacation.

"The parties have previously been before this Court on an allegation of contempt by violation of the PFA Order with other publication on social media. The first allegation was continued with admonishment by the Court to have no contact.

"[The wife] is asking for monetary sanctions rather than incarceration, therefore, IT IS ORDERED, that [the husband] is taxed with attorney's fee in the sum of $5,000.00, to be paid to [the wife] as reimbursement for fees paid to enforce this PFA.

"The PFA remains in effect for 60 days, with the continuing Order as No Contact."

(Capitalization in original). The husband timely appealed on July 11, 2025.

## Analysis

### I. Whether the circuit court erred in denying the husband's motion for recusal

The husband argues that Judge Reynolds displayed a personal bias in favor of counsel for the wife and that a reasonable person would have

a reasonable basis for questioning the judge's impartiality. The husband asserts that Judge Reynolds ignored his motions but promptly responded to motions filed by counsel for the wife. He also argues that the procedural history of the case suggests that ex parte communications took place between Judge Reynolds and counsel for the wife, although the husband does not present any evidence indicating that such communications actually occurred.

As an initial matter, a party may seek review of a denial of a motion for recusal in two ways -- by a timely filed petition for the writ of mandamus or by appeal, having properly preserved the issue below. See Ex parte Crawford, 686 So. 2d 196, 198 (Ala. 1996).

The record is clear that that the matter before this court seeking review of the denial of the recusal motion is an appeal and not a petition for the writ of mandamus. It is also equally clear that there has not been a final judgment in the PFA action. When a party files a petition for a PFA order,

> "[t]he court may enter such temporary ex parte protection orders as it deems necessary to protect the plaintiff or children from abuse, or the immediate and present danger of abuse to the plaintiff or children, upon good cause shown. The court shall grant or deny a petition for a temporary ex parte protection order filed under [the PFA Act] within three

13

business days of the filing of the petition. <u>Any granted temporary ex parte protection order shall be effective until the final hearing date</u>."

Ala. Code 1975, § 30-5-6(b) (emphasis added). Nothing in the record indicates that a final hearing had taken place regarding the PFA order allowing us to construe the circuit court's July 9, 2025, order as a final order in the PFA action. The parties appeared before the circuit court to discuss violations of the temporary PFA order, case-status updates, and various motions; however, nothing in the record indicates that there was a hearing at which both parties discussed the allegations contained in the wife's original petition for protection from abuse. In fact, the record indicates that the parties had agreed to dismiss the PFA action pursuant to certain terms, which suggests that the PFA action was still ongoing.

When the wife raised a new alleged violation of the PFA order, the parties did not then request that the PFA action be dismissed, and no order, therefore, reflects that the PFA action was dismissed. The circuit court ordered only that the temporary PFA order remain in place for an additional 60 days; there has been no final order or hearing in the PFA action. See Ala. Code 1975, § 30-5-7(d)(2) ("Any final protection order is of permanent duration unless otherwise specified or modified by a

subsequent court order."). Therefore, we dismiss the husband's appeal of the order denying his motion for recusal as an appeal from a case in which there has not been a final judgment. McConico v. Carroll, 891 So. 2d 328, 330 (Ala. Civ. App. 2004) ("[T]he judgment is not final and will not support an appeal.").

An appellate court lacks jurisdiction over an appeal, unless the appeal is authorized by a statute or a rule of procedure. See Grall v. Grall, [Ms. SC-2025-0346, Mar. 13, 2026] ___ So. 3d ___ (Ala. 2026). Section 12-22-2, Ala. Code 1975, authorizes appeals from final judgments. Rule 4(a)(1), Ala. R. App. P., authorizes appeals arising from certain types of interlocutory orders. And Rule 70A(g)(1) and (2), Ala. R. Civ. P., authorizes appellate review of an order holding a party in contempt. Neither § 12-22-2 nor Rule 4(a)(1) nor Rule 70A(g) allows for a direct appeal of an order denying a motion to recuse, which is an interlocutory order. See Grall, ___ So. 3d at ___ (holding that order denying motion to recuse neither "qualif[ies] as a final judgment that would support an appeal" nor is "a type of interlocutory order from which Rule 4(a)(1)[, Ala. R. App. P.,] authorizes a direct appeal"); see also Rule 70A(g) (noting that "the adjudication [of contempt] is reviewable by

appeal"). Thus, this court lacks appellate jurisdiction to consider a direct appeal from an interlocutory order denying a motion to recuse.

The dissenters reason that we can nonetheless perform appellate review of such an order because it was "subsumed in a final judgment entered in a contempt proceeding." Alabama does allow for the review of an interlocutory order in an appeal from a final judgment. But that principle does not apply here for two reasons: (1) there was no "final judgment" and (2) no order was entered in a separate "contempt proceeding."

First, the "contempt proceeding" was not a contempt action separate from the underlying PFA action. The wife filed her motion to show cause and her motion for sanctions in the PFA action. The ensuing contempt proceeding was therefore an interlocutory contempt proceeding. Interlocutory contempt proceedings -- held to consider interlocutory contempt claims -- are a part of the action in which they are filed; they are not separate, independent proceedings from the underlying action. Decker v. Decker, 984 So. 2d 1216, 1220 (Ala. Civ. App. 2007) ("[T]he filing of each [interlocutory] contempt motion does not initiate a separate and independent proceeding."). In fact, interlocutory

16

contempt claims are so intertwined with the underlying actions in which they are asserted that, when a trial court's order explicitly reserves ruling on a contempt claim, the failure to rule on that claim renders the order nonfinal. See Rule 70A(g)(3). Thus, the trial court did not enter a "final judgment" in a contempt proceeding; it entered an order in the PFA action adjudicating the wife's interlocutory contempt claims asserted in the PFA action.

Second, the order adjudicating the wife's contempt claims is not a "final judgment"; it is, in this case, an interlocutory order that is appealable under Rule 70A(g). "A final judgment is one that resolves <u>all</u> claims against all parties." <u>Grall</u>, ___ So. 3d at ___ n. 1 (citing <u>Jakeman v. Lawrence Grp. Mgmt. Co.</u>, 82 So. 3d 655, 659 (Ala. 2011)) (emphasis added). The contempt order adjudicates the contempt claims, and Rule 70A(g)(1) and (2) authorize an appeal from the order adjudicating those claims. See Rule 70A(g)(2), (noting that "the adjudication [of contempt] is reviewable by appeal"). But simply because Rule 70A(g) authorizes an appeal from an order adjudicating a contempt claim does not transform that order into a final judgment in the underlying action, in the same way that appellate review of an interlocutory order under Rule 4(a)(1)

17

does not transform the interlocutory order into a "final judgment." To be a final judgment, the order must "resolve[] all claims against all parties." Grall, ___ So. 3d at ___ n. 1. Here, the contempt order adjudicated the wife's contempt claims, but it did not adjudicate any other claims in the PFA action. The contempt order is, therefore, not a "final judgment."

Alabama cases have held that interlocutory orders may be reviewed upon the entry of a final judgment in the action. But that general principle may not be applied here. There was no "final judgment," and the contempt order was not entered in a separate "contempt proceeding."

The dissenters' reliance on Hartford Federal Savings & Loan Ass'n v. Tucker, 192 Conn. 1, 469 A.2d 778 (1984), a Connecticut decision from 1984, is not compelling. Connecticut courts assess whether a contempt claim is appealable using a two-part test set forth in State v. Curcio, 191 Conn. 27, 31, 463 A.2d 566 (1983). N.D.R. Liuzzi, Inc. v. Lighthouse Litho, LLC, 144 Conn. App. 613, 619, 75 A.3d 694, 698 (2013); Khan v. Hillyer, 306 Conn. 205, 210, 49 A.3d 996, 999 (2012) ("In order to resolve this appeal, we must determine whether the trial court's contempt order satisfies either prong of Curcio."). If the contempt claim passes the Curcio test, it is appealable and considered a "final appealable

judgment." Id. Alabama has not adopted a test similar to the Curcio test to determine if a contempt order is a final judgment and therefore appealable. Instead, in Alabama, a party can appeal an interlocutory contempt order because the Alabama Supreme Court promulgated Rule 70A(g), which permits an appeal from an "adjudication of contempt." An interlocutory contempt order is therefore final as to the contempt claims it adjudicates and appealable under Rule 70A(g), but it is not a "final judgment" that necessarily renders other interlocutory orders in the underlying action subject to appeal.

An order denying a motion to recuse is an interlocutory order that, although not listed in Rule 4(a)(1), is subject to review by this court via a petition for the writ of mandamus. Ex parte Crawford, 686 So. 2d at 198. Creating an exception to allow appellate review of interlocutory orders "subsumed" into an interlocutory contempt order, as the dissenters propose, would provide an unnecessary and potentially unbounded avenue for this court to exercise appellate review of interlocutory orders not specified in Rule 4(a)(1).

II. Whether the husband's due-process rights were violated during the July 2, 2025, hearing when the circuit court allowed new evidence

19

indicated that the husband was in violation of the PFA order to be presented

The husband argues that, because the wife did not file any pleading ahead of the July 2, 2025, hearing alleging new violations of the PFA order, the circuit court violated his due-process rights in allowing the wife to present evidence of a new violation to seek a contempt finding and corresponding sanctions. We agree.[2]

> "'"The issue whether to hold a party in contempt is solely within the discretion of the trial court, and a trial court's contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence."'
>
> "J.S.S. v. D.P.S., 281 So. 3d [434] at 437-38 [(Ala. Civ. App. 2019)] (quoting Poh v. Poh, 64 So. 3d 49, 61 (Ala. Civ. App. 2010))."

---

[2]Although we dismiss the husband's appeal as to the denial of his motion for recusal, his appeal of the circuit court's contempt order is properly before us. See Gladden v. Gladden, 942 So. 2d 362, 369 (Ala. Civ. App. 2005) ("[A]n order adjudging a party guilty of contempt is a final, separately appealable judgment."). See also Kimbrough v. Kimbrough, 963 So. 2d 662 (Ala. Civ. App. 2007) (affirming a contempt finding while dismissing other issues on appeal for lack of a final judgment).

Ex parte SE Prop. Holdings, LLC, 353 So. 3d 533, 537 (Ala. 2021). Rule 70A defines two types of contempt -- direct contempt and constructive contempt.

> "Direct contempts are those committed in the 'presence' of the judge, where all of the essential elements of the misconduct are under the eye of the court, and are actually observed by the court. If some of the essential elements are not personally observed by the judge it is [a constructive or] an indirect contempt."

Charles Mfg. Co. v. United Furniture Workers, 361 So. 2d 1033, 1036 (Ala. 1978).

Constructive contempt is divided into two categories -- criminal contempt and civil contempt, which are defined in Rule 70A(a)(2).

> "A proceeding based on constructive contempt, whether criminal or civil, shall be subject to the rules of civil procedure. The proceeding shall be initiated by the filing of a petition seeking a finding of contempt (the petition may be in the form of a counterclaim or cross-claim authorized under Rule 13). The petition shall provide the alleged contemnor with notice of the essential facts constituting the alleged contemptuous conduct."

Rule 70A(c)(1) (emphasis added). The Alabama Supreme Court has stated that providing such "notice of the essential facts constituting the alleged contemptuous conduct" is paramount for due-process considerations in a constructive-contempt proceeding:

> "'Where an individual is charged with indirect or constructive contempt, due process requires that <u>he be given notice of the charges and a reasonable opportunity to meet them, the right to call witnesses and confront his accuser, and the right to give testimony relevant either to complete exculpation or to extenuation of the offense and evidence in mitigation of the penalty to be imposed.</u> <u>In re Oliver</u>, 333 U.S. 257, 68 S. Ct. 499, 92 L. Ed. 682 (1948); <u>International Brotherhood of Electrical Workers, Local 136 v. Davis Constructors & Engineers, Inc.</u>, 334 So. 2d 892 (Ala. 1976).'
>
> "<u>State v. Thomas</u>, 550 So. 2d 1067, 1073 (Ala. 1989) (emphasis added). It is for this reason that a contempt petition should be treated in an analogous way to a pleading."

<u>Hyundai Constr. Equip. Ams., Inc. v. Southern Lift Trucks, LLC</u>, 392 So. 3d 716, 726 (Ala. 2023) (footnote omitted).

In this case, the PFA order in place restricted the husband from contact with the wife. The husband testified that he understood this to include contact via social media. The evidence of the new violation of the PFA order that the wife raised at the July 2025 review hearing occurred in May 2025 -- over a month before that hearing. Despite having over a month to assert these new facts in a contempt motion, the wife waited until the hearing had begun to call the husband to testify about the May

2025 violation without any prior indication that this would happen.[3] Because these circumstances indicate that the husband should have been, but was not, given sufficient notice of the wife's new allegations before the circuit court held him in contempt and issued sanctions, we hold that the husband was not afforded due process and that the circuit court's contempt order is due to be reversed. See Hyundai Constr. Equip. Ams., Inc., 392 So.3d at 728-29 (reversing a contempt order when the party seeking contempt finding presented new evidence of violations of a court order 30 minutes before hearing).

Because we reverse the circuit court's order finding the husband in contempt for violating the PFA order, we also reverse the sanction awarding attorney's fees to the wife. We pretermit any discussion of the husband's arguments that the finding of contempt was not supported by

---

[3]The April 14, 2025, order, which is quoted earlier in this opinion, also does not provide notice as required by Ala. R. Civ. P. 70A(c)(2) ("Upon the filing of a contempt petition, the clerk shall issue process in accordance with these rules .... In any case, the person against whom the petition is directed shall be notified (1) of the time and place for the hearing on the petition and (2) that failure to appear at the hearing may result in the issuance of a writ of arrest pursuant to Rule 70A(d), to compel the presence of the alleged contemnor.").

adequate evidence and whether the alleged conduct constituted a violation of the PFA order based on the plain language of the order.

## Conclusion

Based on the foregoing, we dismiss the husband's appeal of the circuit court's April 14, 2025, order denying the husband's motion for recusal. We reverse the circuit court's July 9, 2025, order insofar as it found the husband in contempt for violating the temporary PFA order and ordering him to pay attorney's fees.

APPEAL DISMISSED IN PART; JULY 9, 2025, ORDER REVERSED; AND CAUSE REMANDED.

Hanson and Fridy, JJ., concur.

Moore, P.J., concurs in part and dissents in part, with opinion, which Edwards, J., joins.

MOORE, Presiding Judge, concurring in part and dissenting in part.

I concur in the main opinion except insofar as it dismisses the appeal from the order denying the motion to recuse.

An order denying a motion to recuse may be brought up for appellate review either by a petition for the writ of mandamus or by an appeal from a final judgment. See Ex parte Crawford, 686 So. 2d 196, 198 (Ala. 1996). In Salvagio v. State, 274 So. 3d 310 (Ala. Crim. App. 2018), and T.K.W. v. State Department of Human Resources ex rel. J.B., 119 So. 3d 1187, 1192 (Ala. Civ. App. 2013), the intermediate appellate courts of this state recognized that an interlocutory order denying a motion to recuse is subsumed in a final judgment entered in a contempt proceeding and that such an order may be reviewed on appeal from the final contempt judgment. However, no reported Alabama case has considered whether an appellate court may review an order denying a motion to recuse in an appeal from an ancillary contempt judgment when the underlying case remains pending.

Alabama law recognizes that an order finding a party in contempt is a final, appealable judgment even though the contempt judgment does not conclude the proceedings in the underlying case. See R.S.F. v. J.D.A.,

[Ms. CL-2025-0284, Jan. 16, 2026] ___ So. 3d ___ (Ala. Civ. App. 2026). Because Alabama law considers such a contempt judgment to be a final judgment, logically, any order denying a motion to recuse relating to the contempt proceeding should be reviewable on appeal. In an appeal from an adverse contempt judgment, the contemnor should be allowed to argue that the trial judge should have recused himself or herself to avoid error in presiding over the contempt proceedings.

In Hartford Federal Savings & Loan Ass'n v. Tucker, 192 Conn. 1, 469 A.2d 778 (1984), Hartford Federal Savings and Loan Association instituted foreclosure proceedings against Stanley V. Tucker, and the trial court appointed a receiver to collect rents on the subject properties. During the foreclosure proceedings, the trial court, after denying a motion to recuse, found Tucker in contempt for continuing to collect rent on the properties, despite the appointment of the receiver. Although the foreclosure proceedings were not concluded by the contempt judgment, Tucker appealed the contempt judgment and argued, among other things, that the trial court had erred by denying his motion to recuse. The Supreme Court of Connecticut held that the interlocutory order denying the motion to recuse was reviewable in the appeal from the

contempt judgment. The court said: "Although denial of a motion to disqualify is, in and of itself, an interlocutory order[,] ... denial of such a motion is appealable in conjunction with the appeal of a final order such as an order of contempt." 192 Conn. At 7-8, 469 A.2d at 782.

In this case, J.J.B. ("the wife") filed a contempt motion against G.M.B. ("the husband") in a protection-from-abuse ("PFA") action that she had commenced against the husband in the Chilton Circuit Court. A contempt hearing was scheduled, and, two days after the scheduling order was entered, the husband filed a motion requesting that Judge Sibley Reynolds recuse himself. After the contempt hearing was continued, the husband repeatedly requested to be heard on the motion to recuse; the husband also filed a motion to stay the proceedings until the recusal motion was adjudicated and, if necessary, subjected to appellate review by a petition for the writ of mandamus. After the parties agreed that the wife would dismiss the contempt motion if no further issues arose between the parties, Judge Reynolds denied the motion to recuse on April 14, 2025. Subsequently, at a scheduled review hearing, Judge Reynolds, without properly notifying the husband, conducted a contempt hearing relating to alleged contemptuous conduct committed

27

by the husband in May 2025. Based on the evidence adduced at the contempt hearing, on July 9, 2025, Judge Reynolds entered an order finding the husband in contempt. The husband appealed.

On appeal, the husband argues, among other things, that his motion to recuse should have been granted to protect his right to a fair trial before an unbiased judge. In my opinion, this court has jurisdiction to review the denial of the motion to recuse. The record indicates that the husband filed the motion to recuse in anticipation of a hearing on the wife's contempt motion. Once the parties conditionally settled the wife's contempt claim, Judge Reynolds denied the motion to recuse. Following the denial, Judge Reynolds presided over an impromptu contempt hearing and entered an adverse judgment against the husband. The motion to recuse was a part of the contempt proceedings, and the order denying the motion to recuse was subsumed in the final judgment finding the husband to be in contempt. Accordingly, our appellate jurisdiction over the final contempt judgment should extend to the order denying the motion to recuse.

Edwards, J., concurs.